LEWIS, J.,
concurring in part and dissenting in part.
I concur with the majority view that this proposed constitutional amendment com *773 plies with the single-subject requirement of article XI, section 3 of the Florida Constitution. To the contrary, however, I dissent with regard to prohibiting the proposed amendment from being placed on the ballot with the present ballot summary. In my view, the summary is not unlawfully misleading and is in compliance with all applicable statutory provisions. The people of Florida should be permitted to cast votes on this proposal in the current form as presented through the petition process, which addresses comprehensive land use plans, a subject that impacts the quality of life of Floridians every day. Unfortunately, the catch-phrase label of “emotional rhetoric” has become an unpredictable “eye-of-the-beholder” missile to undermine this entire process.
First, the general provisions article of the Constitution of the State of Florida specifically refers to natural resources and scenic beauty as it particularly provides:
Section 7. Natural resources and scenic beauty.—
(a) It shall be the policy of the state to conserve and protect its natural resources and scenic beauty.
The majority now characterizes this as “political rhetoric.” I suggest that the now-fatal sentence is no more political or rhetorical than the introductory phrase approved by this Court in Advisory Opinion to the Attorney General re Limiting Cruel & Inhumane Confinement of Pigs During Pregnancy, 815 So.2d 597 (Fla.2002), in which this Court considered a ballot summary that specifically included the editorial type comment that “[ijnhumane treatment of animals is a concern of Florida citizens.” A very similar policy type phrase was also approved and permitted in a proposed constitutional amendment in Advisory Opinion to the Attorney General Limited Marine Net Fishing, 620 So.2d 997 (Fla.1993), which provided:
The marine resources of the State of Florida belong to all of the people of the state and should be conserved and managed for the benefit of the state, its people, and future generations.
The Advisory Opinion to the Attorney General re Florida Transportation Initiative for Statewide High Speed Monorail, 769 So.2d 367 (Fla.2000), decision also approved an introductory phrase very similar to that rejected by the majority today. The ballot summary there provided:
To reduce traffic and increase travel alternatives....
Id. at 368.
Finally, an introductory phrase of similar import was approved in a ballot summary in Advisory Opinion to Attorney General re Protect People From the Health Hazards of Second-Hand Smoke, 814 So.2d 415 (Fla.2002). There the introductory phrase: “To protect people from the health hazards of second-hand tobacco smoke” was challenged under the same “political rhetoric” argument advanced today to deny ballot access. We rejected the charge there and should do likewise in this challenge.
Contrary to the majority’s superficial attempt to distinguish the many cases flowing from this Court on this issue, the proposed constitutional amendment with regard to pregnant pigs was limited exclusively to the confinement or tethering of pigs during pregnancy on a farm that would prevent the pig from turning freely. The proposed amendment there had absolutely nothing to do with the treatment of any other animal. The introductory phrase of the ballot summary was directed to the emotional appeal of inhumane treatment of animals generally (not limited to pigs). The focus of the summary was placed on animals in general while the proposed amendment was limited to pigs *774 and clearly could have been characterized as being in the nature of an editorial comment rather than an accurate statement of the amendment if the majority’s reasoning had been applied. If the weak rationale employed by the majority had been adopted, it could have certainly been stated that the “reason” for promoting the “pig amendment” was a general concern for animals but the “purpose” of the amendment was limited exclusively to pigs. This Court did not engage in the artificial reasoning advanced today and the ballot summary was approved.
In a similar manner, if the reasoning adopted today was the appropriate yardstick by which ballot summaries have been measured, the high speed monorail amendment should have been rejected by this Court but was not. The high speed monorail, fixed guideway or magnetic levitation system proposal contained no provision tied to traffic nor did it provide any alternatives other than the high speed system. Applying the majority’s rationale, traffic reduction and multiple travel alternatives (plural) may have been “reasons” for the amendment but a single high speed system was in fact the only subject mandated by the amendment and its “purpose.”
In my view, comprehensive land use planning cannot be segregated from natural resources or the scenic beauty of any land area. The logic of the majority fails to recognize or accommodate the total integration of comprehensive land use planning and Florida’s natural resource concerns.
Certainly all of the foregoing cases have particular distinctive facets, but all of these cases involving this particular challenge over, the years have differences due to the ad hoc nature of each determination. However, notwithstanding the unique features of each case, it is my view that the asserted case-specific distinctions are without a material difference. No doubt voter approval of a constitutional proposal such as that presented for our review here would have a significant structural public accountability impact across this State, but that is not and should not be a factor that weighs in on the “political” or “rhetorical” analysis. We simply need more uniformity in the application of this analysis for predictability in the process. ' This analytical approach and selective enforcement unnecessarily wastes time, resources, and human effort and generates controversy that need not encumber the constitutional process. The appropriate analysis to determine whether a proposal is misleading has, in my view, been misdirected today. I would not prohibit this proposed amendment from being presented to the people of Florida.
ANSTEAD, J., concurs.